UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SHAMEI BROWN,

|  |  |
|---|---|
| Petitioner, | **REPORT AND RECOMMENDATION** |
| -against- | 13 Civ. 2071 (NSR)(PED) |

BRIAN FISHER, Commissioner,
New York State Department of Corrections,

                                    Respondent.
-------------------------------------------------------X


TO THE HONORABLE NELSON R. ROMÁN,  United States District Judge:

## I.  INTRODUCTION

Shamei Brown ("Petitioner"), proceeding *pro se*, seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  Following a jury trial in Westchester County (Bellantoni, J.), petitioner was found guilty of murder in the second degree, attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second degree.[1]  This petition comes before me pursuant to an Order of Reference dated May 3, 2013 (Dkt. #6).  For the reasons set forth below, I recommend the petition be **DENIED** in its entirety.

## II.  BACKGROUND[2]

---

[1]  Petitioner was sentenced, as a second felony offender, to an indeterminate term of imprisonment of twenty years to life for the murder conviction, determinate terms of seventeen years and five year terms of post-release supervision on the attempted murder and assault convictions, and a determinate term of fifteen years and five years of post-release supervision on the weapons conviction.  The determinate terms were imposed to run concurrently with each other but consecutive to the indeterminate term imposed on the murder conviction.  Petitioner is currently incarcerated at Shawangunk Correctional Facility in Wallkill, New York.

[2]  Unless otherwise indicated, the information within this section is gleaned from the instant petition ("Pet.") (Dkt. #1), respondent's Affidavit in Opposition to Petition for Writ of Habeas Corpus ("Resp. Aff.") (Dkt. #8), respondent's Memorandum of Law and Exhibits ("Resp. Opp.") (Dkt. #10), and petitioner's Memorandum of Law in Reply to Respondent's

**A.** **The Criminal Offense, Police Investigation, and Arrest**

On Halloween night, October 31, 2005, petitioner and an accomplice approached cousins Todd Carolina and Raymond Harris outside the Hartley House projects in New Rochelle, New York, and opened fire. Carolina was severely wounded in the attack, and Harris died as a result of his injuries. Prior to the attack, the killers had roamed the complex seeking an individual called "Los."

Investigators determined that "Los" was one Carlos Brickle, a younger cousin of the victims. Brickle was affiliated with a local gang and was closely associated with gang member Rodney Alston. Alston, in turn, had been implicated in the murder of petitioner's brother, Dacheau Brown, three weeks earlier. Concerned about possible repercussions from that killing, police had maintained a visible presence at the Hartley Houses throughout October, but those officers were deployed elsewhere on Halloween night. At trial, the prosecution theory was that petitioner attacked Carolina and Harris in retaliation for the Dacheau Brown murder.

Carolina did not implicate petitioner while he was hospitalized for his injuries. Weeks later, however, Carolina contacted the police and agreed to identify the shooter. Carolina subsequently selected petitioner's picture from a photo array, and after petitioner was arrested Carolina picked petitioner out of a lineup.

**B.** **Indictment and Pretrial Proceedings**

Petitioner was indicted for murder in the second degree (N.Y. Penal Law § 125.25(1)), attempted murder in the second degree (N.Y. Penal Law §110/125.25(1)), assault in the first degree (N.Y. Penal Law §120.10(1)), and criminal possession of a weapon in the second degree

_____

Affidavit Pursuant to 28 U.S.C. 2254 for Writ of Habeas Corpus ("Pet. Reply") (Dkt. # 14).

(N.Y. Penal Law §265.03).  On September 8 and 11, 2006, the trial court conducted a <u>Wade</u>

hearing to assess the validity of the identifications.  The court found that the procedures were not

unduly suggestive and denied petitioner's motion to suppress identification evidence.

**C.**　　**Conviction and Sentence**

On September 29, 2006, petitioner proceeded to trial.  The jury convicted petitioner as

charged.  On January 26, 2007, petitioner was sentenced, as a second felony offender, to an

indeterminate term of imprisonment of twenty years to life for the murder conviction,

determinate terms of seventeen years and five year terms of post-release supervision on the

attempted murder and assault convictions, and a determinate term of fifteen years and five

years of post-release supervision on the weapons conviction.  The determinate terms were

imposed to run concurrently with each other but consecutive to the indeterminate term imposed

on the murder conviction.

**D**.　　**Direct Appeal**

On appeal to the Appellate Division, Second Department, petitioner argued that: 1) the

identification procedures used were suggestive; 2) the prosecution improperly introduced

hearsay evidence to support its theory that petitioner committed the alleged crimes to avenge the

murder of his brother; 3) the evidence was legally insufficient to support the verdict; and 4) the

verdict was against the weight of the evidence.

By decision and order dated November 22, 2011, the Appellate Division, Second

Department, affirmed petitioner's conviction.  <u>People v. Brown</u>, 89 A.D.3d 1032 (2d Dept.

2011).  In response to petitioner's first claim, the appellate court held that "[t]he hearing court

properly denied that branch of the defendant's omnibus motion which was to suppress

identification evidence."  <u>Id.</u> at 1032 (citations omitted).  The appellate court further held that

petitioner's claims that the evidence was legally insufficient and that the prosecutor's theory that petitioner was motivated by revenge for his brother's killing was based on hearsay were unpreserved for appellate review and without merit.  Id. at 1033.  Finally, the court found that the verdict was not against the weight of the evidence.  Id.  By letter dated December 14, 2011, petitioner sought leave to appeal.  On February 22, 2012, the Court of Appeals denied leave. People v. Brown, 18 N.Y.3d 922 (2012).

**E.**    **Motion to Set Aside Sentence**

In July 2012, petitioner – now acting *pro se* – filed a motion to set aside his sentence pursuant to N.Y. Crim. Proc. Law § 440.20.  Petitioner claimed that the consecutive sentences imposed by the court were illegal and invalid.  By decision and order dated October 2, 2012, the Supreme Court, Westchester County (Neary, J.), denied petitioner's motion, noting that petitioner shot and killed Harris and then shot Carolina in the face, seriously injuring him, "by separate bullets fired in separate deliberate acts.  The [petitioner] pointed, aimed and fired at each victim at separate times and in separate, deliberate acts however close in time they may have been."  By papers dated November 1, 2012, petitioner sought leave to appeal that decision to the Appellate Division, Second Department.  By decision and order dated December 28, 2012, petitioner's application for leave to appeal was denied.

**E.**    **Federal *Habeas Corpus* Proceedings**

Petitioner timely filed the instant petition on March 27, 2013.  Petitioner seeks *habeas* relief on four grounds:  1) the identification procedures used by police were unduly suggestive; 2) petitioner's due process rights were violated when the trial court permitted the introduction of hearsay to support the prosecution's theory as to petitioner's motive; 3) the evidence was legally insufficient to support the guilty verdict and the verdict was against the weight of the evidence;

and 4) petitioner's consecutive sentences were illegal.

## III.  APPLICABLE LAW

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with  § 2254(d).  The procedural and substantive standards applicable to habeas review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

### A.    Timeliness

The AEDPA established a one-year statute of limitations for the filing of a habeas corpus petition seeking relief from a state court conviction.  See 28 U.S.C. § 2244(d)(1).  The one-year limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

The AEDPA's statute of limitations is tolled during the pendency of a properly filed application for state post-conviction relief, or other collateral review, of a claim raised in the petition. See id. § 2244(d)(2). The one-year limitation period is also subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011). "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline." Id. Additionally, "[c]onsistent with the maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll." Id. at 138 (internal quotation marks and citations omitted); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (A petitioner seeking equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.").

**B.    Procedural Default**

Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or that he is actually innocent.  See Bousley, 523 U.S. at 622; Coleman v. Thompson, 501 U.S. 722, 750 (1991). See also Lee v. Kemna, 534 U.S. 362, 375 (2002); Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002).  A procedural ground is "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."  See Harris, 489 U.S. at 263 (internal quotation marks omitted).  A procedural bar is "adequate" if it is "based on a rule that is firmly established and regularly followed by the state in question." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

In certain limited circumstances, however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'"  See Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007) (citing Lee, 534 U.S. at 376).  To this end, the Second Circuit has set forth the following "guideposts" for evaluating the adequacy of the state procedural bar in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances": (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule

given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.  Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85).

**C.**   **Exhaustion**

A federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented").  The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims.  Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).  "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal

constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)).  Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted).  In doing so, a petitioner need not cite chapter and verse of the Constitution; there are a number of other ways in which a petitioner may fairly apprise the state court of the constitutional nature of his claim, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011).  A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted).  "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).  Such a procedurally barred claim may be deemed exhausted by a federal habeas court. See, e.g., Reyes, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

When confronted with a "mixed" petition containing both exhausted and unexhausted claims, a federal court has the following options: (1) it may stay the proceedings and hold the petition in abeyance in order to permit the petitioner to return to state court and exhaust the unexhausted claim(s); (2) it may permit the petitioner to amend the petition and excise any unexhausted claim; (3) it may dismiss without prejudice the entire petition; or (4) it may review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless."  See 28 U.S.C. § 2254(b)(2); Rhines v. Weber, 544 U.S. 269, 277-78 (2005); Zarvela v. Artuz, 254 F.3d 374, 378-82 (2d Cir. 2001); Reyes v. Morrissey, No. 07 Civ. 2539, 2010 WL 2034531, at *9 (S.D.N.Y. Apr. 21, 2010) report and recommendation adopted, 2010 WL 2034527 (S.D.N.Y. May 19, 2010).[3]

**D.**     **Standard of Review**

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991).  See 28 U.S.C. § 2254(a).  When reviewing petitions filed subsequent to the AEDPA's effective date, a federal court may not grant habeas relief unless the petitioner establishes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (d)(2).  The AEDPA deferential standard of review will be triggered if the

---

[3]  Copies of all unpublished cases available only in electronic form cited herein have been mailed to petitioner.  See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

petitioner's claim "was adjudicated on the merits in State court proceedings."  28 U.S.C. §

2254(d); see Bell v. Miller, 500 F.3d 149, 154-55 (2d Cir. 2007).  "For the purposes of

AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits

when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."

Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state

court applies a rule that contradicts the governing law set forth [by the Supreme Court of the

United States]" or (2) "the state court confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

different from [Supreme Court] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as

opposed to the dicta, of [Supreme Court] decisions.  And an 'unreasonable application of'

those holdings must be objectively unreasonable, not merely wrong; even 'clear error' will not

suffice."  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and

citations omitted).  "The critical point is that relief is available under § 2254(d)(1)'s

unreasonable application clause if, and only if, it is so obvious that a clearly established rule

applies to a given set of facts that there could be no 'fairminded disagreement' on the

question."  Id. at 1706-07 (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)) ("As

a condition for obtaining habeas corpus from a federal court, a state prisoner must show that

the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement.").

Finally, under the AEDPA, the factual findings of state courts are presumed to be

correct.  See 28 U.S.C. §2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir.

1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  28

U.S.C. §2254(e)(1).

## IV.  ANALYSIS

**A.**    <u>**Procedurally Barred Claims (Claims Two and Three)**</u>

In his second claim for habeas relief, petitioner alleges that he was "deprived of his

right of confrontation, due process and a fair trial by introduction of incompetent hearsay

evidence that purported to support the prosecution theory, stated unequivocally as fact in the

prosecutor's opening, that this was a revenge killing by the defendant for the murder of his

brother."  Pet. 6.  In his third claim for habeas relief, petitioner contends that "[t]he evidence

was insufficient to support the guilty verdict, and the verdict was against the weight of the

credible evidence."  Pet. 9.

Petitioner presented these arguments to the Second Department on direct appeal.  The

Second Department rejected both claims on procedural grounds, and, alternatively, on their

merits:

> The defendant's contentions that his conviction was not supported by
> legally sufficient evidence and, in particular, that the People's theory of the case
> was improperly supported only by hearsay evidence, are unpreserved for
> appellate review (see People v. Hawkins, 11 N.Y.3d 484, 491–492).  In any event,
> viewing the evidence in the light most favorable to the prosecution (see People v.
> Contes, 60 N.Y.2d 620), we find that it was legally sufficient to establish the
> defendant's guilt beyond a reasonable doubt of the crimes charged.  Moreover,
> upon our independent review pursuant to CPL 470.15(5), we are satisfied that the
> verdict of guilt was not against the weight of the evidence (see People v. Romero,
> 7 N.Y.3d 633).

People v. Brown, 89 A.D.3d 1032, 1033, 933 N.Y.S.2d 339, 340 (2011).  Thus, the state

court explicitly invoked New York's preservation rules as a basis for its decision.  Where

a state court has expressly relied on such procedural grounds to deny a claim, federal habeas review is foreclosed even if the state court has also addressed the merits of the claim in the alternative.  See Geren v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (federal habeas review barred where state court held claim "not preserved for appellate review" but then ruled on the merits of the claim "in any event").

New York's contemporaneous objection rule (codified at section 470.05(2) of New York's Criminal Procedure Law) "provides that, with a few exceptions . . . New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." Downs v. Lape, 657 F.3d 97, 103 (2d Cir. 2011).  Thus, New York courts require a contemporaneous objection to preserve a claim of erroneous admission of evidence.  See People v. Riback, 13 N.Y.3d 416, 420, 920 N.E.2d 939, 941 (2009) (holding that, where defense counsel did not contemporaneously object to witness questioning, defendant's argument that the trial judge erred in allowing certain testimony was not preserved for appellate review).  Further, New York law requires that "[t]o preserve . . . a challenge to the legal sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error being urged." People v. Hawkins, 11 N.Y.3d 484, 492, 900 N.E.2d 946, 950 (2008).

The Second Circuit has consistently recognized New York's contemporaneous objection rule as an independent and adequate state procedural rule barring habeas review.  See, e.g., Whitley v. Ercole, 642 F.3d 278, 292 (2d Cir. 2011); Brown v. Ercole, 353 F.App'x 518, 520 (2d Cir. 2009); Garvey, 485 F.3d at 720; Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) (Federal courts "have observed and deferred to New York's consistent application of its

-13-

contemporaneous objection rules.").   Thus, "[f]ailure to timely object to admission of

evidence at trial, when state law requires such a contemporaneous objection, constitutes an

independent and adequate state ground." Harvey v. Mazzuca, No. 04 CIV. 8019 (PKC), 2006

WL 1529325, at *2 (S.D.N.Y. June 5, 2006).  See Green v. Walsh, No. 03CV00908

(GBD)(DCF), 2006 WL 2389306, at *1 (S.D.N.Y. Aug. 17, 2006) (procedural bar where

petitioner, who claimed that trial court improperly allowed hearsay testimony, had failed to

contemporaneously object at trial and appellate court held that argument was unpreserved).

Moreover, failure to preserve a sufficiency of the evidence claim by moving for a trial order of

dismissal specifically identifying the error alleged also constitutes an independent and

adequate state ground.  See Velez v. Cunningham,  No. 09 Civ. 6506 (NSR) (LMS), 2013 WL

5272953 (S.D.N.Y. Sept 17, 2013) (*habeas* review of sufficiency of evidence claim foreclosed

where, "[w]ith its allusion to People v. Hawkins, the appellate court determined that [a

petitioner] procedurally defaulted this claim because he did not preserve [it] for appellate

review by moving for a trial order of dismissal 'specifically directed at the error being urged'

on appeal.") (citation omitted).

　　　The state court's application of CPL 470.05(2) in this case was not exorbitant.  As to the

first Cotto consideration, it is "meaningless to ask whether the alleged procedural violation was

actually relied on in the trial court–the violation only first occurred when defendant raised an

argument on appeal that he had not raised earlier."  See Garvey, 485 F.3d at 719.  Indeed,

perfect compliance with CPL 470.05 would have given the trial court an opportunity to address

head-on the issues petitioner now raises.  The second Cotto consideration clearly weighs

against petitioner because, as discussed above, New York case law requires compliance with

the contemporaneous objection rule under the specific circumstances presented here.  The third

-14-

Cotto consideration similarly disfavors petitioner because, just as in Garvey, petitioner did not simply violate the "formal requirements" of CPL 470.05(2), but rather "the very essence" of the rule.  See id. at 720.  Moreover, petitioner's compliance would have served a legitimate purpose in that "[a]t a bare minimum, the trial court could have developed a factual record supporting its decision[s] that could then properly be reviewed on appeal."  See Whitley, 642 F.3d at 290.

Because there is an adequate and independent finding by the state appellate court that petitioner procedurally defaulted on the claims he now asserts as grounds for *habeas* relief, petitioner must demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  See Coleman, 501 U.S. at 750.  Petitioner has failed to demonstrate cause and prejudice and there is no indication that this Court's failure to address the merits of the unpreserved claims would result in a fundamental miscarriage of justice.

Accordingly, petitioner's procedural default bars federal review of his second and third claims for habeas relief.[4]

## B.   Claims Reviewable on the Merits (Claims One and Four)

_____

[4]  To the extent that petititoner claims that the verdict was against the weight of the credible evidence, it is well-established that a weight of the evidence claim is exclusively a matter of state law.  It therefore does not present a federal question reviewable by a federal habeas court.  See, e.g., McKinnon v. Superintendent. Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011), cert. denied, 132 S.Ct. 1151 (2012) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus."); Garrett v. Perlman, 438 F.Supp.2d 467, 470 (S.D.N.Y. 2006) (weight of evidence claim is a state law claim arising under N.Y.Crim. Proc. Law § 470.15 and therefore does not present a federal question); Douglas v. Portuondo, 232 F.Supp.2d 106, 116 (S.D.N.Y. 2002) (a weight of the evidence claim is "an error of state law, for which habeas review is not available"); see also Estelle v. McGuire, 502 U.S. 62, 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

In his first claim for *habeas* relief, petitioner claims that "[a]s the identification procedures conducted were unduly suggestive, and no independent source was shown, the witnesses should not have been permitted to identify the defendant at trial." Pet. 4.  In his fourth claim, petitioner asserts that his "fifth amendment right to be free from multiple punishment was violated when the people failed to establish the legality of consecutive sentence which acted to deprive defendant his right to due process." Pet. 11.  Petitioner has properly exhausted these claims.  Therefore, I will address the merits of each of these claims.

 *1. Claim One*

 Petitioner's claim that the identification procedures used by police were unduly suggestive is without merit.  The Supreme Court has held that "reliability is the linchpin in determining the admissibility of identification testimony."  Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

> The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

Id.  The Second Circuit has endorsed this standard, stating that such evidence "will be admissible "if (a) the procedures were not [unnecessarily] suggestive or (b) the identification has independent reliability."  Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009) (alteration in original) (citing Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001)).  "[A]n identification procedure may be deemed unduly and unnecessarily suggestive if it is based on police procedures that create 'a very substantial likelihood of irreparable misidentification.'"  Id. (citing Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)).

"[W]hether [an] identification procedure was unnecessarily suggestive depends on (1) [the] suggestiveness of [the] procedure and (2) [the] necessity of [the] procedure." United States v. Bautista, 23 F.3d 726, 730 (2d Cir.1994) (citing United States v. Stevens, 935 F.2d 1380, 1389 (3rd Cir. 1991)). "If the pretrial procedures were not suggestive, any remaining questions as to reliability . . . go to the weight of the identification and not to its admissibility, and the identification therefore is generally admissible without any further reliability inquiry." United States v. Thai, 29 F.3d 785, 808 (2d Cir. 1994).

"It is not required . . . that all of the photographs in the array be uniform with respect to a given characteristic." Jarrett v. Headley, 802 F.2d 34 (2d Cir. 1986). See, e.g., Jones v. Fischer, No. 05CIV.7774 (WHP), 2009 WL 884814, at *5 (S.D.N.Y. Mar. 30, 2009) ("[T]here is no requirement that all lineup participants be identical in appearance . . . ."). Similarly, "[w]hen the appearance of participants in a lineup is not uniform with respect to a given characteristic, the principal question in determining suggestiveness is whether the appearance of the accused, matching descriptions given by the witness, so stood out from all of the other[s] . . . as to suggest to an identifying witness that [that person] was more likely to be the culprit." United States v. Wong, 40 F.3d 1347, 1359–60 (2d Cir. 1994) (quotations omitted), cert. denied, 514 U.S. 1113, 115 S.Ct. 1968 (1995). "[C]ourts have found that a lineup is unduly suggestive 'if the defendant is the only participant who meets the particular description of the perpetrator given by eyewitnesses.'" Espiritu v. Haponik, No. 05 CIV. 7057 RJS, 2012 WL 161809 at *6 (S.D.N.Y. Jan. 19, 2012); accord, e.g., Piper v. Portuondo, 82 F. App'x 51, 52 (2d Cir. 2003).

*A. Photo Array*

Petitioner's claim that the photo array was unduly suggestive because the fillers were

thinner than petitioner is without merit.  "The due process clause does not require law enforcement officers to scour about for a selection of photographs so similar in their subject matter and composition as to make subconscious influences on witnesses an objective impossibility." United States v. Morgan, 690 F. Supp. 2d 274, 283 (S.D.N.Y. 2010) (quoting United States v. Bubar, 567 F.2d 192, 199 (2d Cir. 1977)).  Here, the array contained petititoner's photo and that of five other men who all appear to be of similar age and build and who have similar skin tone, hairstyles, and facial hair.  The photos are all front-facing headshots, depicting the subjects from the neck or upper chest upwards.

In determining that the "hearing court properly denied that branch of the defendant's omnibus motion which was to suppress identification evidence," the appellate court found that "[s]uccessive photo arrays are not per se impermissibly suggestive . . . . Further, the participants in the photo array were sufficiently similar to the defendant in appearance so that there was little likelihood that the defendant would be singled out for identification based on particular characteristics." People v. Brown, 89 A.D.3d 1032, 1032-33 (2d Dept. 2011).  Because petitioner has not presented clear and convincing evidence rebutting the state court's factual determinations regarding the photo array, those findings are presumed correct.  See, e.g.,Wager v. Ercole, No. 06 CIV 0814 (GBD) (HBP), 2009 WL 6443854, at *9 (S.D.N.Y. June 12, 2009) report and recommendation adopted, No. 06 CV 0814 (GBD)(HBP), 2010 WL 1904329 (S.D.N.Y. May 10, 2010) quoting Velazquez v. Poole, 04 Civ. 478(ENV)(CLP), 2007 WL 3240550 at *5 (E.D.N.Y. Oct. 30, 2007) ("[T]he trial court's 'factual finding of general physical similarity among all individuals shown in the photo arrays' must be rebutted by clear and convincing evidence.").

B.  Lineup

Petitioner's claim that Carolina's identification of petitioner in a lineup was unduly suggestive is likewise without merit. "[T]here is no requirement that even in line-ups the accused must be surrounded by persons nearly identical in appearance, however desirable that may be." United States v. Reid, 517 F.2d 953, 965 n.15 (2d. Cir. 1975). Here, the fillers and petitioner shared general physical characteristics. They were all African-American men with similar skin tone, similar hairstyles and facial hair, and stocky builds. The lineup participants were all dressed in blue hospital scrubs and seated with a sheet across their midsections to conceal petititoner's handcuffs. "[T]he lineup was not unduly suggestive based on disparate weights since the lineup participants were seated, with their lower bodies covered and their torso largely covered . . . ." Stallings v. Heath, No. 11 CIV. 4894 (DLC) (AJP), 2012 WL 735399, at *11 (S.D.N.Y. Mar. 7, 2012) report and recommendation adopted, No. 11 CIV. 4894 (DLC), 2012 WL 1538513 (S.D.N.Y. May 2, 2012).

In support of its determination that denial of defendant's motion to suppress identification evidence was proper, the appellate court found that "[t]here is also no requirement that a defendant in a lineup be surrounded by individuals nearly identical in appearance . . . . Here, the alleged variations in appearance between the fillers and the defendant were not so substantial as to render the lineup impermissibly suggestive . . . ." People v. Brown, 89 A.D.3d 1032, 1033 (2d Dept. 2011). Absent clear and convincing evidence rebutting the state court's factual determinations regarding the lineup, those findings are presumed correct. See, e.g., Espiritu v. Haponik, No. 05 CIV. 7057 RJS, 2012 WL 161809 at *6 (S.D.N.Y. Jan. 19, 2012) ("[F]actual findings of the state court regarding the suggestiveness of the lineup must be presumed correct in the absence of clear and convincing evidence to the contrary.").

-19-

Accordingly, the state court's determination that the identification procedures were not unduly suggestive is not contrary to, or an unreasonable application of, established federal law.

*2. Claim Four*

As his final ground for *habeas* relief, petitioner claims that his sentence was illegally imposed and invalid as a matter of law because the court ordered his sentence for the murder of Harris to run consecutively to his sentences for the attempted murder and assault of Carolina and for criminal possession of a weapon. Although the federal claim petitioner seeks to advance is not stated with precision, I construe the petition to raise a due process claim.[5]

———————————————

[5] Though petitioner states in the heading for this claim in his habeas petition that his "fifth amendment right to be free from multiple punishment" was violated by the consecutive sentences, his argument supporting his illegal sentence claim is founded on allegations of due process violations. Pet. 11. In the body petition, petitioner argues that "the people . . . acted to deprive defendant of his right to due process" and refers to "the due process implication being asserted herein." Pet. 12.

In his Memorandum of Law in support of his Motion to Set Aside Sentence, petitioner presented arguments, not repeated in his *habeas* petition, that his sentences violated the double jeopardy clause of the Fifth Amendment. To the extent that petitioner attempts to invoke this claim in his *habeas* petition as well, it is without merit. See Palacios v. Burge, 470 F. Supp. 2d 215, 225 (E.D.N.Y. 2007) (The state court's conclusion that consecutive sentences did not run afoul of the Double Jeopardy clause was not contrary to or an unreasonable application of clearly established Supreme Court law, where "[a]lthough part of one extended transaction, . . . offenses . . . were based on separate and distinct acts: one involved the stabbing of [one victim] and the other involved the stabbing of [another]."). See also Campbell v. Lee, No. 11 CIV. 4438 (PKC)(AJP), 2013 WL 5878685, at *16 (S.D.N.Y. Oct. 11, 2013) report and recommendation adopted, No. 11-CV-4438 (JPO), 2014 WL 6390287 (S.D.N.Y. Nov. 17, 2014) ("Because the consecutive sentences were imposed for separate and distinct offenses, the petitioner was not subjected to Double Jeopardy."); Brown v. Doe, 803 F. Supp. 932, 947 (S.D.N.Y. 1992) (Imposition of three consecutive sentences for three counts of murder did not constitute double jeopardy or cruel and unusual punishment so as to entitle habeas petitioner to relief, where state court determined that each act of murder was separate and distinct and neither was material element of others.).

In support of this claim, petitioner argues that the imposition of consecutive sentences violated New York Penal Law § 70.25(2) because the counts for which he received consecutive sentences did not arise out of separate and distinct acts.  Under § 70.25(2), "[w]hen more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission . . . the sentences . . . must run concurrently."  Petitioner was ultimately sentenced to two terms of imprisonment to run consecutively:  one term of twenty years to life for his conviction for murder in the second degree, and a second term of concurrent sentences amounting to seventeen years imprisonment for his convictions for attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second degree.

This claim, without more, is not cognizable on habeas review because it amounts to an allegation that the state court erroneously applied state law.  See Estelle, 502 U.S. at 67–68, 112 S.Ct. 475 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Thomas v. Larkin, No. 12 cv 2899, 2013 WL 5963133, at *13 (E.D.N.Y. Nov. 7, 2013) ("[W]hether the sentencing court properly applied New York State Penal Law § 70.25 in determining that [petitioner's] sentences were consecutive rather than concurrent is not cognizable on federal habeas review.").

In any event, it is clear that petitioner's consecutive sentences were not imposed in violation on New York Penal Law § 70.25(2).  For purposes of Section 70.25(2), each act of "pulling a trigger to discharge a firearm" is a "separate and distinct act."  People v. McKnight, 16 N.Y.3d 43, 917 N.Y.S.2d 594, 942 N.E.2d 1019, 1023 (2010).  By decision and order dated October 2, 2012, the trial court (Neary, J.) denied petititoner's motion to set aside his sentence pursuant to N.Y. Crim. Proc. Law § 440.20, stating that:

> It is clear from the record that the victim's [sic] were each shot by separate bullets fired in separate deliberate acts.  The defendant pointed, aimed and fired at each victim at separate times and in separate, deliberate acts however close in time they may have been.  Under these circumstances, the imposition of consecutive sentences was proper in all respect [sic].

Respondent's Declaration in Opposition, Ex. 11.  Because petitioner committed separate and distinct acts when he shot Carolina and Harris, despite the temporal proximity of the shootings, petitioner's fourth claim for habeas relief should be denied.  See Bonilla v. Lee, 35 F.Supp.3d 551 (S.D.N.Y. Aug. 9, 2014).

## IV. CONCLUSION

For the reasons set forth above, I conclude—and respectfully recommend that Your Honor should conclude—that the instant petition for a writ of habeas corpus should be denied in its entirety.  Further, because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Dated:   March 27, 2015
       White Plains, New York

Respectfully submitted,

PAUL E. DAVISON, U.S.M.J.

NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with

any responses to the objections, shall be filed with the Clerk of the Court with extra copies

delivered to the chambers of the Hon. Nelson S. Román, at the Hon. Charles L. Brieant, Jr.

Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New

York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga

County, 517 F.3d 601, 604 (2d Cir. 2008).

     Requests for extensions of time to file objections must be made to Judge Román.

Chambers has mailed a copy of this Report and Recommendation to:


Shamei Brown DIN # 07-A-0796
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589